UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PAMELA HOSKINS-HARRIS,     )
    )
    Plaintiff,     )
    )
    vs.     )     Case No. 4:06-CV-321 (JCH)
    )
TYCO/MALLINCKRODT HEALTHCARE,     )
INC., et al.,     )
    )
    Defendants.     )

## MEMORANDUM AND ORDER

The matter is before the Court on Defendant Tyco/Mallinckrodt Healthcare's ("Mallinckrodt") Motion for Summary Judgment (Doc. No. 65), filed January 31, 2008, and United Auto Workers Local 1887's ("Union") Motion for Summary Judgment (Doc. No. 67), filed January 31, 2008. The matters are fully briefed and ready for disposition.

## BACKGROUND

Mallinckrodt operates a plant that manufactures pharmaceutical products in St. Louis, Missouri. (Union's Statement of Facts ("Union's Facts"), Doc. No. 67 at Ex. 1 ¶¶ 1-2). On June 19, 2000, Mallinckrodt hired Plaintiff, a black female, to work at the plant. (Am. Compl., Doc. No. 21 at ¶ 10). At that time, she also joined the Union. (Id.). At all relevant times, the Union and Mallinckrodt had a collective bargaining agreement ("CBA"). (Union's Facts, Doc. No. 67-12 at Ex. 24). The CBA allowed Mallinckrodt to make "reasonable rules and regulations . . . for the purposes of maintaining order, safety and effective operation of the plant." (Id. at p. 123). Pursuant to this authority, Mallinckrodt enacted a rule that "[f]ighting is not permitted under any circumstances." (Id. at Ex. 10).  It defines fighting as "physical contact with an intent to do bodily harm." (Id.). Finally,

it states that "[a]ny employee who is fighting on Company property will be subject to immediate discharge." (Id.).

On March 5, 2005, a fight occurred in the women's locker room at the plant between Plaintiff and Fannie McCoy ("McCoy") over a fan being turned on and a door being propped open. (Mallinckrodt's Statement of Facts ("Mallinckrodt's Facts"), Doc. No. 68 at Ex. A pp. 186-89). During this fight, the women wrestled with each other as well as scratched, bit, and punched each other. (Id. at ¶¶ 12-14). At one point, Plaintiff bit off two fingernails so she could make a closed fist. (Id. at ¶ 15). In all, the fight lasted approximately three minutes, (Id. at Ex. A p. 194) and it ended when Marcella Farrell ("Farrell") entered the locker room and found Plaintiff pinning McCoy on the ground with her knee. (Union's Facts at Ex. 2 ¶ 5). Farrell contacted Ron Worlitz ("Worlitz"), the shop steward, who then broke up the fight. (Id. at Ex. 1 ¶¶ 11-14). McCoy required medical treatment for scratches and bruises on her face, and a bite wound on her ear. (Mallinckrodt's Facts at Ex. N ¶¶ 7-9). Plaintiff needed treatment for a bite wound on her right hand. (Id. at ¶ 7).

Stephen Coenen ("Coenen"), a member of Mallinckrodt's Human Resources Department, investigated the incident. (Id. at ¶ 3). Coenen took reports about the fight from Plaintiff, Worlitz, Farrell, McCoy, Betty Bechel, Cassandra Klein, Tom Meyer, Jennifer Crowder, Dr. Tom Kibby, James Champion, and Isabel Hileman. (Id.). Despite this investigation, Mallinckrodt could not determine which woman was the aggressor because each claimed that the other started the fight. (Id. at ¶ 11). On March 9, 2005, Mallinckrodt terminated both women's employment. (Id. at Ex. M ¶ 5).

On March 10, 2005, Plaintiff filed a grievance with the Union alleging that she was "unjustly terminated" and "treated unfairly" for defending herself. (Id. at Ex. D). That day, the Union filed a grievance with Mallinckrodt to protest her termination. (Union's Facts at Ex. 1 ¶ 41). Because Plaintiff's grievance involved her termination, it began at step three of the grievance process, which

requires the Union to appeal the decision to Mallinckrodt's Human Resources Department ("Human Resources"). (Union's Facts at Ex. 24 pp. 102-03). According to the CBA, Human Resources and the Union Bargaining Committee[1] ("Committee") must meet to discuss the grievance within seven days. (Id. at p. 103). Human Resources must also provide the Union with a written answer to the grievance within seven days of the meeting. (Id.).

On March 11, 2005, the Union met with Plaintiff to discuss her situation. At that time, Plaintiff authorized the Union to review her medical records and provided it with names of other employees she believed had negative information about McCoy. (Union's Facts at Hoskins-Harris Dep. Vol. I pp. 22-26). The Union interviewed all the employees that Plaintiff identified as having information, but could not establish which woman started the fight. (Id. at Ex. 1 ¶¶ 42-23). On May 2, 2005, Human Resources and the Committee met. (Id. at ¶ 44). At the meeting, the Committee argued that both women should be rehired because it was unclear who started the fight and both had good work records. (Id. at ¶¶ 47-48). Mallinckrodt refused to rehire them because both admitted engaging in a protracted fight that resulted in both needing medical care. (Id. at ¶ 49). Moreover, Mallinckrodt stressed that it had a "zero tolerance policy against fighting from which it would not deviate." (Id.). On May 16, 2005, the Union received Human Resources' written denial of the grievance. (Id. at p. 22).

On May 19, 2005, the Committee conducted its own screening meetings regarding Plaintiff's and McCoy's grievances to determine whether to pursue them in arbitration. (Id. at ¶¶ 51-52). After informing Plaintiff that Mallinckrodt had denied the grievance, the Committee again questioned her about the incident. (Id. at ¶¶ 54-55). Plaintiff acknowledged that she and McCoy previously had a

---

[1]The Committee consists of the Union President, Vice-President, Second Vice-President, Financial Secretary, Recording Secretary, Steward, and the International Representative. (Id.).

disagreement that prompted her supervisor to warn her about the possible consequences of not improving her relationship with McCoy. (Id. at ¶ 56). She acknowledged, but later denied, biting McCoy, and she again claimed that McCoy was the aggressor. (Id. at ¶ 58). In her meeting, McCoy claimed that Plaintiff attacked her and bit her in the face. (Id. at Ex. 4 ¶ 7). The bite mark on McCoy's face was still visible at this meeting. (Id. at ¶ 8).

The Committee did not vote on the two grievances until May 26, 2005 so that all seven members of the Committee could participate. (Id. at ¶ 10). At the meeting, three members stated that they had reviewed the grievance records since 1990 and were only able to find one other case where an hourly employee, Betty Gee ("Gee"), was charged with violating the no-fighting rule. (Id. at Ex. 1 ¶ 65). In response, Mallinckrodt terminated Gee's employment.[2] (Mallinckrodt's Facts at ¶ 48). Mike Cannon, the International Representative for the Union, told the Committee that he believed Plaintiff would lose in arbitration because the fight clearly violated Mallinckrodt policy, it was unclear who was the aggressor, neither woman seemed credible, and no favorable arbitration precedent existed. (Id. at Ex. 4 ¶ 12). At the meeting, Plaintiff's sex and race were not discussed. (Id. at Ex. 1 ¶ 69; Ex. 4¶ 13). The Committee unanimously voted to not pursue arbitration for either woman. (Id. at Ex. 1 pp. 25-26).[3]

On June 6, 2005, the Committee informed Plaintiff in writing that they would not arbitrate the grievance on her behalf. (Id. at ¶ 70). Plaintiff appealed this decision to the Union's general membership at the June 28, 2005 meeting. (Id.). The membership did not act on the motion at this

---

[2]An arbitrator reversed Gee's termination and gave her a twenty-one day suspension because he found that she slapped another employee once on the back of the helmet and did not initiate the contact with an "intent to do bodily harm." (Union's Facts at Ex. 3 pp. 9, 14-16).

[3]Recording Secretary Tea Thomas abstained in both votes. (Id.). Joe Staley, the President, did not vote because he only votes in case of a tie. (Id. at ¶ 68).

time, but the membership rejected her appeal by a vote of eight to three at the September 27, 2005 meeting. (Id. at ¶¶ 71-73). Plaintiff appealed the matter to the International Executive Board of the United Auto Worker's Union, which denied her appeal on October 10, 2006. (Id. at Ex. 58-59).[4]

On February 24, 2006, Plaintiff filed her Complaint.[5] (Doc. No. 3). On October 10, 2006, Plaintiff filed an Amended Complaint alleging: (1) sexual and racial discrimination by Mallinckrodt, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; and (2) breach of agreement and fiduciary responsibility by the Union. (Am. Compl., Doc. No. 21). The basis of Plaintiff's Title VII claim is that Mallinckrodt treated her differently due to her race and sex by terminating her for fighting because it had not terminated other employees for fighting. (Mallinckrodt's Facts at ¶ 66). Plaintiff alleges that the following employees were not terminated by Mallinckrodt for fighting: Larry Buehler; Karla Campbell; Cathy Collins; Gary Conway; Patrick Crowley; Nick Fecurka; Harold Gibson; Ed Muecke; Ed Simmons; Francis Smith; David Thompson; and Pamela Tuhill. (Id. at ¶ 32). Plaintiff admits not having any personal knowledge about these employees fighting at the plant. (Id. at ¶¶ 36-38). She learned about these employees fighting at the plant from the following employees: Arnold Cozart ("Cozart"); Jarvis Gamblin ("Gamblin"); Larry Galvin ("Galvin"); Shirley Gause ("Gause"); and Tea Thomas ("Thomas").[6] (Id. at ¶ 33). Cozart,

_____

[4]Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") that the Union was engaged in unfair labor practices. (Union's Facts at Ex. 43). The NLRB dismissed this charge. (Id. at Ex. 45). She filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which was also denied. (Id. at Ex. 62).

[5]In July 2005, Plaintiff filed for bankruptcy. (Mallinckrodt's Facts at ¶ 67). During these proceedings, she failed to disclose that she may have a legal action against either the Union or Mallinckrodt. (Id. at ¶¶ 69-70). Defendants believe that because of this failure to disclose, the Court should invoke judicial estoppel and dismiss Plaintiff's claims. Upon consideration, the Court need not address this issue. Even if the Court were to address this issue, it would not dismiss Plaintiff's claims on this ground. See Copeland v. Hussmann Corp., 462 F. Supp. 2d 1012, 1018-20 (E.D. Mo. 2006).

[6]Plaintiff submits an affidavit from Thomas stating that Ed Muckie; Ed Simmons; Harry Gibson; Nick Fecuka; Larry Buehelur; David Thompson; Pat Tuohill; and Carla Campbell were not

Gamblin, Galvin, Gause, and Thomas all admit that they never witnessed a fight or physical altercation at the plant. (Id. at Ex. K ¶ 2, Ex. L ¶ 3; Ex. O ¶ 2; Ex. P ¶¶ 2-3; and Ex. Q ¶¶ 2-4). Mallinckrodt has no record of the employees named by Plaintiff, or any other employees, ever fighting at the plant without being terminated. (Id. at ¶ 46). To make this determination, Human Resources consulted with two supervisors having a combined forty-eight years of experience, searched it records, and questioned its management team. (Id. at Ex. M ¶¶ 12-14; Ex. N ¶¶ 12-13; Ex. R ¶¶ 1-3; Ex. T ¶¶1-3).

Plaintiff also alleges that Cale Henderson, Christ Pipert, and Carl Simon all harassed another employee while working for Mallinckrodt. (Id. at ¶ 43). Plaintiff admits that she does not even know in what department these people presently work or have previously worked. (Id. at ¶ 44). Plaintiff admits that, during her employment, she never heard any abusive language or discriminatory comments, remarks, or slurs about her race or gender. (Id. at ¶ 51).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

---

terminated for fighting at work. (Resp at Ex. 2 p.2). Thomas, however, later provided Defendants with an affidavit stating that she "did not witness these alleged incidents of fighting/physical altercations referred to in my affidavit." (Mallinckrodt's Facts at Ex. Q ¶¶ 3-4).

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I.      Claims against Mallinckrodt

As previously stated, Plaintiff alleges that Mallinckrodt violated Title VII by terminating her employment because of her race and gender. Mallinckrodt asserts that it terminated Plaintiff's employment for a legitimate reason, and Plaintiff cannot show that this reason was a pretext for discrimination.

Title VII prohibits employers from discharging an individual on the basis of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff has no direct evidence of racial or sexual discrimination, her claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Clark v. Johanns, 460 F.3d 1064, 1067 (8th Cir. 2006). Once Plaintiff satisfies this burden, Mallinckrodt must offer a legitimate, non-discriminatory reason for the employment action. Quick v. Wal-Mart Stores, Inc., 441 F.3d 606,

610 (8th Cir. 2006). The burden of production then returns to Plaintiff to show that the Mallinckrodt's reason was a pretext for discrimination. Id.

To establish a prima facie case of discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007). The threshold of proof  to establish a prima facie case is "minimal." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (citing Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998)). The Court assumes, without deciding, that Plaintiff has established a prima facie case.

Mallinckrodt offers a legitimate, non-discriminatory reason for terminating Plaintiff's employment:  her fight with McCoy. See Hitt v. Harsco Corp., 356 F.3d 920, 924-25 (8th Cir. 2004); Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 561 (8th Cir. 1997) (holding "[i]t is beyond question that an employee's striking of a fellow employee is a legitimate, nondiscriminatory reason for dismissal."). Thus, the burden shifts back to Plaintiff to show that this reason was a pretext for discrimination. Making a showing of pretext requires "more substantial evidence than it takes to make out a prima facie case"  because unlike evidence establishing a prima facie case, evidence of pretext is viewed in light of the employer's justification. Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (citations omitted). To carry this burden, the employee must show that the proffered reason was "unworthy of credence." Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). An employee can demonstrate pretext by showing the employer meted out more lenient treatment to similarly situated employees who are not a member of the protected class. Salitros v. Chrysler Corp.,

306 F.3d 562, 570 (8th Cir. 2002). Another method is to show that the employer's proffered reason has no basis in fact. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002).

In order to show that she is similarly situated, plaintiff must put forward evidence showing that other employees were "'involved in or accused of the same or similar conduct and were disciplined in different ways.'" Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007) (quoting Turner v. Gonzales, 421 F.3d 688, 695 (8th Cir. 2005)). This test is considered a "rigorous one." Reed v. Rolla Pub. Sch. Dist., 374 F. Supp. 2d 787, 805 (E.D. Mo. 2005) (quoting Pope v. ESA Servs., Inc., 406 F.3d 1001, 1009 (8th Cir. 2005)). The Eight Circuit requires that the other employees "must have been similarly situated to the plaintiff in all relevant aspects." Kight v. Auto Zone, Inc., 494 F.3d 727, 734 (8th Cir. 2007) (internal quotations omitted). When employees have been terminated by different decision makers, it is rare "for them to be considered similarly situated because any difference in treatment may well be to attributable to non-discriminatory reasons." Id.

Upon consideration, Plaintiff cannot show that Mallinckrodt's reason for terminating her was pretextual because she has not put forward any admissible evidence that other similarly situated employees were not terminated for fighting. Plaintiff has not produced any evidence of any other fights occurring at the plant. She offers the affidavit of Thomas to support her claims, but Thomas admits that she has no personal knowledge of the fights Plaintiff relies on to support her Title VII claim. See Halbach v. Great W. Life & Annuity Ins. Co., 522 F. Supp. 2d 1154, 1162 (E.D. Mo. 2007) (holding a court will not consider evidence in an affidavit unless it is "based upon personal knowledge of an affiant; information and belief is insufficient."). Additionally, there is no evidence that any of the employees who supposedly engaged in fighting were terminated by the same decision makers as Plaintiff, or had the same job responsibilities as her. See Kight, 494 F.3d at 734. According to the admissible evidence, the only other employee ever disciplined for fighting was Gee, but that

incident was significantly less severe than the one involving Plaintiff. See Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691-92 (8th Cir. 2002) (holding employees are not similarly situated if they engage in differing degrees of misconduct). Finally, Plaintiff has not put forward any evidence that any employees made inappropriate comments to her regarding her race or her gender. As such, the Court will grant Mallinckrodt's motion for summary judgment.

## II.      Claims against the Union

Plaintiff alleges that the Union breached its duty of fair representation by refusing to arbitrate her grievance. The Union responds that it fulfilled its duty to represent her.[7]

As the exclusive bargaining agent in the negotiation and administration of the CBA, the Union "assumes the responsibility and duty of fair representation for all of its members." Jones v. United Parcel Serv., Inc., 461 F.3d 982, 994 (8th Cir. 2006). Section 301 of the Labor Management Relations Act permits an action against the Union for breach of this duty. 29 U.S.C. § 185. The Union breaches it duty of fair representation only when "its conduct toward a member is 'arbitrary, discriminatory, or in bad faith.'" Jones, 461 F.3d at 994 (quoting Vaca v. Sipes, 386 U.S. 171, 186-87 (1967)).

The Union's conduct is arbitrary if "considering all the circumstances at the time of the union's action or inaction, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Cross v. United Auto Workers, Local 1762, 450 F.3d 844, 847 (8th Cir. 2006); see Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068-69 (8th Cir. 1996)). Any substantive examination of the Union's performance must be "highly deferential, recognizing the wide latitude that negotiators need for the performance of their bargaining responsibilities." Air Line Pilots Ass'n,

---

[7]The Union also discusses why Plaintiff's Title VII claim against it fails. This discussion is unnecessary because Plaintiff has not alleged a Title VII action against the Union. (Am. Compl. at ¶¶ 51-62).

Int'l v. O'Neill, 499 U.S. 65, 78 (1991). Mere "negligence, poor judgment, or ineptitude" by the Union is insufficient to establish a breach of the duty of fair representation. Buford v. Runyon, 160 F.3d 1199, 1202 (8th Cir. 1998). The Union does not act arbitrarily simply because "it does not pursue a grievance that it has decided lack merit." See Cross, 450 F.3d at 847. Similarly, to show bad faith, Plaintiff must offer evidence "of fraud, deceitful action or dishonest conduct" by the Union. Schmidt v. Int'l Bhd. of Elec. Workers, Local 949, 980 F.2d 1167, 1170 (8th Cir. 1992).

Upon consideration, the Union's actions were neither arbitrary nor in bad faith. The Union thoroughly investigated the incident and found no evidence to support Plaintiff's position. (Union's Facts at Ex. 1 ¶¶ 54-58; Ex. 4 ¶¶ 7-8). The Union found that Plaintiff was not credible. (Id. at Ex. 4 ¶ 12). The Union searched prior arbitration decisions and found only the Gee decision, which involved a significantly less severe incident than the one involving plaintiff. (Id.). In sum, the Union did not breach its duty of fair representation by investigating the grievance and deciding not to pursue it in arbitration due to a lack of credible evidence and favorable precedent. See Martin v. Am. Airlines, Inc., 390 F.3d 601, 607 (8th Cir. 2004) Washington v. Serv. Employees Int'l Union, Local 50, 130 F.3d 825, 827 (8th Cir. 1997); Smith v. McDonnell Douglas Corp., 107 F.3d 605, 607 (8th Cir. 1997). Thomas' affidavit states that she was not able to participate in the grievance vote on May 26, 2005. (Resp. at Ex. 2). This fact, however, does not make the Union's decision arbitrary or in bad faith. Every other Bargaining Committing member voted to not pursue the arbitration. (Union's Facts at Ex. 1 pp. 25-26).

Plaintiff also claims that the Union's decision to not arbitrate was discriminatory. To show discrimination, Plaintiff must show that the Union did not provide her with similar treatment that other members have received. See Buford, 160 F.3d at 1202. Plaintiff has not put forward any

evidence that the Union treated her differently than other members, meaning this claim fails. As such, the Court will grant the Union summary judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Tyco/Mallinckrodt Healthcare's Motion for Summary Judgment (Doc. No. 65) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant United Auto Workers Local 1887's Motion for Summary Judgment (Doc. No. 67) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint is **DISMISSED**. A separate order of dismissal will accompany this order.

Dated this 14th day of May, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE